**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------X

FRANCIS JOHN WOHNSIGL,

Plaintiff,

-against-

GREGORY C. BERNHARDT, JESUS E. BONILLA, JAMES P. GILROY, and RYAN HINES,

Defendants.

-----------------------------------------------------------------------X

**MEMORANDUM AND OPINION**
18-CV-1841(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this 42 U.S.C. § 1983 action, is Defendants', Nassau County Detectives Gregory C. Bernhardt ("Bernhardt"), Jesus E. Bonilla ("Bonilla"), James P. Gilroy ("Gilroy") and Ryan Hines ("Hines") (collectively, "Defendants") motion for summary judgment. *See* Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Defs.' Mem."), Docket Entry ("DE") [99-14]; *see also* Defendant's Reply Memorandum of Law in Support of Motion for Summary Judgment (Defs.' Reply"), DE [99-22]. Plaintiff Francis John Wohnsigl ("Plaintiff" or "Wohnsigl") opposes the motion. *See* Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp."), DE [99-18].

By way of Complaint filed March 26, 2018, DE [1], Amended Complaint filed March 4, 2019, DE [38], and Second Amended Complaint dated March 2, 2020, DE [53] ("SAC"), Wohnsigl commenced this action against Defendants alleging violations of 42 U.S.C. § 1983. The SAC asserts claims for excessive force, failure to intervene, and municipal liability. On January 28, 2025, by Stipulation of Partial

Discontinuance, Plaintiff withdrew and discontinued this action as against the County of Nassau, Nassau Police Department, and Detective Jeffrey S. Raymond, and withdrew all municipal liability claims. *See* DE [90]. Accordingly, the Court addresses the Plaintiff's remaining Fourth Amendment claims for excessive force and failure to intervene against Bernhardt, Bonilla, Gilroy, and Hines in their individual capacities. Plaintiff seeks compensatory and punitive damages arising from the injuries allegedly sustained during his November 30, 2017 arrest by Defendants. *See generally,* SAC.

Defendants seek summary judgment principally on the grounds that: (1) Plaintiff cannot establish the personal involvement of Detectives Gilroy and Hines in the alleged use of force; (2) the record does not support Plaintiff's excessive force or failure-to-intervene claims; (3) Defendants are entitled to qualified immunity; and (4) Plaintiff cannot recover punitive damages. Wohnsigl opposes the motion, arguing that genuine disputes of material fact concerning the circumstances of his arrest, the amount and sequence of force, the location and conduct of the individual detectives, and the opportunity to intervene preclude summary judgement.

For the reasons set forth below, Defendants' motion for summary judgment is GRANTED in part and DENIED in part.

## I. BACKGROUND

### A. Relevant Facts

The following facts are taken from the parties' pleadings, declarations, exhibits, deposition testimony, and respective Fed. R. Civ. P. 56.1 statements. Unless

otherwise indicated, the facts are undisputed or are construed in the light most favorable to Plaintiff as the non-moving party. Where the parties dispute particular facts, those disputes are noted.

1. <u>The Arrest</u>

This action arises from Plaintiff Wohnsigl's arrest on November 30, 2017, by members of the Nassau County Police Department. Defendants contend the arrest followed an investigation into two attempted commercial burglaries in Plainview, New York. Defendants' Rule 56.1 Statement ("Defs.' 56.1"), DE [99-15], ¶¶1-3. According to Defendants, Plaintiff attempted to burgle two businesses by attempting to break their front windows or doors, was unsuccessful, and returned to his car where he remained inside with the engine running until approached by police. *Id.*

Detective Bernhardt was among the officers participating in the arrest. Defendants contend that Bernhardt approached Plaintiff's vehicle with his firearm drawn and ordered Plaintiff to turn off the engine and place his hands on the steering wheel. Defendants further contend that Plaintiff initially failed to comply and instead placed the vehicle in reverse in an apparent attempt to flee before ultimately following Detective Bernhardt's commands. *Id.* at ¶¶ 4-8.

Plaintiff disputes Defendants' characterization of these events. Wohnsigl maintains that he immediately turned off the engine, left the keys in the ignition, exited the vehicle as instructed, and positioned himself with his hands on the roof of the car and his back toward the detective. Plaintiff's Rule 56.1 Statement ("Pl.'s 56.1"), DE [99-19], ¶¶ 5-10.)

The parties agree that Detectives Bernhardt, Bonilla, Gilroy, and Hines participated in the operation that resulted in Plaintiff's arrest. Defs.' Mem. at 2-4; Pl.'s Opp. at 3-4. The precise location and actions of each detective during the encounter, the circumstances surrounding the force used, and the sequence, duration and amount of force employed by Defendants, however, are disputed.

2. Plaintiff's Injuries and the Use of Force

The events immediately following Plaintiff's exit from the vehicle form the core of this action and are sharply disputed. Wohnsigl testified that after complying with Detective Bernhardt's instructions, and while standing with his hands on the roof of the vehicle, Bernhardt pointed a gun at him, and then Bonilla approached from the side and struck him in the face causing him to fall down. Pl.s' 56.1 at ¶¶9-10. Plaintiff described the blow as a "blind-side" punch to the right side of his face. Wohnsigl Deposition Transcript ("Wohnsigl Dep. Tr."), DE [99-7], at 95: 5-7.

Plaintiff further testified that Detective Bernhardt kicked him in the ribs multiple times while he was on the ground and before he lost consciousness. Pl.'s 56.1 ¶¶ 9-10, 13; Wohnsigl Dep. Tr. at 101:2 – 102:14. Wohnsigl estimated that he remained unconscious for approximately one to two minutes and did not observe what occurred during that period. Wohnsigl Dep. Tr. at 97:8-11. Plaintiff later recalled waking up to officers placing him in handcuffs. *Id.* at 97:11-13. Wohnsigl does not allege that Detectives Gilroy or Hines personally struck him. Rather, Plaintiff attributed the alleged punch exclusively to Detective Bonilla and the alleged kicks exclusively to Detective Bernhardt. Pl.'s 56.1 ¶¶9-10, 13. Defendants agree that

Detectives Gilroy and Hines did not strike Plaintiff in any manner. Defs.' 56.1 ¶¶20-21, 30, 32.

Defendants, however, dispute Plaintiff's account of the encounter and maintain that the officers acted reasonably while attempting to arrest Wohnsigl. All Defendants deny that any one of them punched, kicked or otherwise struck Plaintiff, or saw anyone else do the same. Defs.' 56.1 ¶¶ 30, 32; Bernhardt Deposition Transcript ("Bernhardt Dep. Tr."), DE [99-9], at 48:25-50:8; Bonilla Deposition Transcript ("Bonilla Dep. Tr."), DE [99-8], at 42:5-6, 58:8-18, 58:22-59:7; Gilroy Deposition Transcript ("Gilroy Dep. Tr."), DE [99-10], at 48:15-22; Hines Deposition Transcript ("Hines Dep. Tr."), DE [99-11], at 41:2-23. Defendants further maintain that Plaintiff's description of the incident is inconsistent with the remaining evidence, including the detectives' testimony and Plaintiff's inability to observe events after he lost consciousness. Defs.' Mem. at 8-9.

The parties also dispute the nature of the encounter. Defendants contend that they were attempting to gain control of Plaintiff in his car, and then on the ground outside his car, while he resisted arrest. Bernhardt Dep. Tr. at 39:19-25, 41:13-25; Bonilla Dep. Tr. at 35:9-11, 17-18.

Plaintiff counters that he was punched and kicked, sustaining injuries to his face, head, and torso, and that those injuries corroborate his account of the force employed by Detectives Bonilla and Bernhardt. Pl.'s 56.1 ¶¶41-43. Wohnsigl further testified that he received medical treatment at the Nassau University Medical Center ICU for the injuries he sustained. Wohnsigl Dep. Tr. at 119:2-5. Defendants' medical

expert disputes that the medical evidence corroborates Plaintiff's account, and contends that the injuries are consistent with the reasonable force they used. *See* Wright Deposition Transcript ("Wright Dep. Tr."), DE [99-21], at 54:16-25; 59:5-61:5.

At summary judgment, the Court does not resolve the parties' competing interpretations of the medical evidence. Rather, evidence of Plaintiff's injuries is relevant insofar as it bears upon whether genuine disputes of material fact exist regarding the amount and the circumstances under which force was used.

3. <u>The Detectives</u>

Plaintiff's allegations differ as to each detective. Plaintiff identifies Detective Bonilla as the officer who delivered the initial punch and Detective Bernhardt as the officer who repeatedly kicked him. Pl.'s 56.1 ¶¶9-10, 13. Wohnsigl does not identify Detectives Gilroy or Hines as personally striking him. *Id.* at ¶¶9-10, 13. Defendants contend that Detectives Gilroy and Hines were not present during the alleged punch and kicks and came only to the arrest scene once Plaintiff was being handcuffed. Defs.' 56.1 ¶¶20-21, 30, 32. All Defendants deny that any one of them punched, kicked or otherwise struck Plaintiff, or saw anyone else do the same. Defs.' 56.1 ¶¶ 30, 32; Bernhardt Dep. Tr. at 48:25-50:8; Bonilla Dep. Tr. at 42:5-6, 58:8-18, 58:22-59:7; Gilroy Dep. Tr. at 48:15-22; Hines Dep. Tr. at 41:2-23.

**B. Procedural History**

The Court assumes the parties' familiarity with the procedural history of this action and summarizes only those proceedings relevant to the present motion.

Plaintiff Wohnsigl commenced this action on March 26, 2018, pursuant to 42 U.S.C. § 1983, alleging that members of the Nassau County Police Department violated his constitutional rights during his November 30, 2017 arrest. Specifically, Plaintiff asserts that officers employed excessive force in arresting him and failed to intervene to prevent the alleged constitutional violations. SAC ¶¶ 27-35.

The claims and parties were narrowed through prior rulings and stipulations among the parties, as set forth above. The only remaining claims are Plaintiff's Fourth Amendment claims for excessive force and failure to intervene against Bernhardt, Bonilla, Gilroy, and Hines, each sued in his individual capacity.

Following the close of discovery, Defendants moved for summary judgment, arguing that: (1) Plaintiff cannot establish the personal involvement of Gilroy and Hines in the alleged use of force; (2) the force employed by Bonilla and Bernhardt was objectively reasonable; (3) no Defendant had a realistic opportunity to intervene; (4) each Defendant is entitled to qualified immunity; and (5) Plaintiff's demand for punitive damages should be dismissed. Defs.' Mem. at 8-15.

Plaintiff opposes, arguing that the parties' materially different accounts of the events surrounding the arrest, together with other record evidence, create triable issues as to the amount and reasonableness of the force used and the opportunity for the other detectives to intervene. Pl.'s Opp. at 5-9. Wohnsigl further argues that the factual disputes underlying his constitutional claims likewise preclude summary judgment on Defendants' qualified immunity defense. *Id.*

## II. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of establishing that there are no issues of material fact such that summary judgment is appropriate. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). In deciding a motion for summary judgment, the Court is "required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts … [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 1356 (1986) (internal quotation marks omitted); *see Maxton v. Underwriter Labs, Inc.*, 4 F.Supp.3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered genuine when a reasonable finder of fact could render a verdict in favor of the non-moving party.") (internal quotation omitted).

In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986); *see Artis v. Valls*, No. 9:10-CV-0427 GTS/TWD, 2012 WL 4380921, at *6 (N.D.N.Y. Sept. 25, 2012) ("It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment.").

## III. DISCUSSION

Defendants seek summary judgment, arguing principally that: (1) Plaintiff cannot establish the personal involvement of Detectives Gilroy and Hines; (2) the force employed by Detectives Bonilla and Bernhardt was objectively reasonable, or alternatively unsupported by record evidence; (3) no Defendant had a realistic opportunity to intervene; (4) Defendants are entitled to qualified immunity; and (5) Plaintiff cannot recover punitive damages. The Court addresses each claim in turn.

### A. Excessive Force

Claims that law enforcement officers employed excessive force during an arrest are analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395–97, 109 S. Ct. 1865, 1870-3 (1989); *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). The inquiry balances "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests." *Graham*, 490 U.S. at 396, 109 S. Ct. at 1871 (internal quotation omitted).

Whether force is objectively reasonable depends upon the totality of the circumstances confronting the officers, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The inquiry must be judged from the perspective of a reasonable officer on the scene, recognizing that police officers are often required to make split-second decisions in rapidly evolving circumstances. *Id.* at 396–97, 109 S. Ct. at 1871-2.

At the same time, the Second Circuit has repeatedly cautioned that summary judgment is often inappropriate in excessive force cases because the reasonableness inquiry frequently turns on disputed factual issues regarding the amount of force used, the threat posed by the plaintiff, and the sequence of events leading to the arrest. *See*, e.g., *Tracy*, 623 F.3d at 96–99; *Kerman v. City of New York*, 261 F.3d 229, 239–40 (2d Cir. 2001). For example, force that might be reasonable at the outset of an encounter may become unreasonable once the circumstances materially change -- such as, if a suspect is no longer resisting, is on the ground, or no longer poses an immediate threat. *See Tracy*, 623 F.3d at 98–99; *see also Brown v. City of New York*, 798 F.3d 94, 100–03 (2d Cir. 2015) (noting excessive force claims require balancing case-specific facts and circumstances).

The summary-judgment inquiry is fact specific, and therefore turns on what a reasonable jury could find about the circumstances confronting the officer at the time the challenged force was used. Summary judgment is inappropriate where the

parties offer materially different versions of the encounter, and the Court may not resolve those disputes or weigh competing testimony on summary judgment.

1. Detectives Bonilla and Bernhardt

Applying these principles, the Court concludes that genuine disputes of material fact preclude summary judgment on Plaintiff's excessive force claims against Detectives Bonilla and Bernhardt. The parties agree on relatively little regarding the events immediately surrounding Plaintiff's arrest. Defendants argue that any force employed during the arrest was reasonable under the circumstances, emphasizing the rapidly evolving nature of the encounter and Plaintiff's inability to recall events occurring after he lost consciousness. They further contend that Plaintiff's description of the incident is inconsistent with other evidence in the record (Defs.' Mem. at 8-9) and that none of them punched, kicked or otherwise struck Plaintiff, or saw anyone else do the same. Defs.' 56.1 ¶¶ 30, 32; Bernhardt Dep. Tr. at 48:25-50:8; Bonilla Dep. Tr. at 42:5-6, 58:8-18, 58:22-59:7; Gilroy Dep. Tr. at 48:15-22; Hines Dep. Tr. at 41:2-23.

These arguments, however, ask the Court to resolve factual disputes and make credibility determinations that are properly reserved for the jury. Viewing the evidence in the light most favorable to Wohnsigl, a reasonable jury could conclude that Detective Bonilla striking Plaintiff without warning, followed by Detective Bernhardt kicking Wohnsigl multiple times after he had fallen to the ground was excessive. If credited, such testimony would support a finding that the force employed was objectively unreasonable under the Fourth Amendment, particularly if the jury

concludes that Plaintiff was not resisting or otherwise posed an immediate threat at the time the challenged force was applied. *See Tracy*, 623 F.3d at 99 (holding that gratuitous force against a subdued or restrained suspect may violate the Fourth Amendment); *see also Brown*, 798 F.3d at 100–03 (finding that "[e]ven resistance sufficient to result in conviction for resisting arrest does not preclude a finding of excessive force in effectuating the arrest.") (internal citations omitted).

Defendants also emphasize that Plaintiff was unable to observe portions of the encounter after losing consciousness and argue that this testimony necessarily forecloses any finding that additional force was used. The Court disagrees. Plaintiff's inability to describe every moment of the arrest does not render inadmissible or legally insufficient the testimony he does provide concerning the events preceding his loss of consciousness. Nor does it eliminate the possibility that a jury could consider that testimony together with the remaining evidence—including the officers' testimony, medical records, and the nature of Plaintiff's injuries—in reconstructing the events surrounding the arrest. *See Kerman*, 261 F.3d at 240 (reversing summary judgment where the district court improperly resolved factual disputes concerning the amount of force employed).

Accordingly, material factual disputes concerning the circumstances of the arrest, the nature and the conditions surrounding force used, preclude summary judgment for Detectives Bonilla and Bernhardt on the excessive force cause of action.

2. Detectives Gilroy and Hines

The analysis differs with respect to Detectives Gilroy and Hines. Unlike Detectives Bonilla and Bernhardt, Plaintiff does not identify either Gilroy or Hines as personally striking him. Indeed, Defendants correctly observe that Plaintiff consistently attributed the alleged punch exclusively to Detective Bonilla and the alleged kicks exclusively to Detective Bernhardt. Defs.' 56.1 ¶¶ 27, 29.

Here, Plaintiff identifies no evidence indicating that either Gilroy or Hines struck him, directed another officer to do so, or otherwise personally participated or assisted in the challenged use of force. Rather, Wohnsigl's theory rests principally upon the fact that all four detectives participated in the arrest operation. Pl.'s Opp. at 6-8. Standing alone, this evidence is insufficient. The Court therefore grants summary judgement to Detectives Gilroy and Hines on the excessive force claim.

**B. Failure to Intervene**

Plaintiff separately alleges that each Defendant is liable for failing to intervene to prevent the use of excessive force by fellow officers. "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). An officer who fails to intervene may be liable under Section 1983 where "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) there was a realistic opportunity to intervene to prevent the harm from occurring." *Id.*; *see Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (finding "[l]aw

enforcement officials can be held liable under Section 1983 for not intervening in a situation where excessive force is being used by another officer." (internal citations omitted)).

Whether an officer had a realistic opportunity to intervene ordinarily presents a question of fact. Courts within this Circuit have repeatedly recognized that summary judgment is appropriate only where the undisputed record establishes either that the defendant was not present during the alleged constitutional violation or that the challenged conduct occurred so suddenly that no reasonable juror could conclude the defendant had sufficient time to intercede. *Figueroa v. Mazza*, 825 F.3d 89, 106–08 (2d Cir. 2016); *Anderson*, 17 F.3d at 557. Conversely, where the evidence permits competing inferences regarding an officer's location, ability to perceive the alleged use of force, or opportunity to prevent it, those questions are generally reserved for the jury. *Id.*

Here, because a jury could plausibly determine an underlying constitutional violation by Defendants, liability is determined by whether each Defendant had a realistic opportunity to prevent another officer's conduct. *See Lennox v. Miller*, 968 F.3d 150, 158 (2d Cir. 2020) (reversing denial of qualified immunity where, even assuming an officer observed another officer's use of force, the record did not show a realistic opportunity to intervene). Accordingly, the Court must determine whether each Defendant was present at the arrest, and whether the record would permit a reasonable jury to conclude that that Defendant had sufficient time and opportunity to prevent another officer's conduct.

1. Detectives Bonilla and Bernhardt

Defendants argue that the failure-to-intervene claims against Detectives Bonilla and Bernhardt fail because Plaintiff alleges that they were the officers who personally used force and cannot be found liable for failing to intervene in their own conduct, and because the alleged encounter occurred within only a matter of seconds such that each did not have a reasonable opportunity to intervene in the other's conduct. Defs.' Mem. at 10-12.

The Court rejects Defendants' argument. While logically an officer cannot be liable for failing to intervene in his own conduct, that proposition does not dispose of a claim that one officer failed to prevent another's force. Rather, the crux of the failure-to-intervene claim is whether the record would permit a reasonable jury to conclude that Detective Bonilla had an opportunity to prevent Detective Bernhardt's alleged use of force, or vice versa.

On the present record, the Court cannot conclude that Defendants are entitled to judgment as a matter of law. Defendants deny any punching and kicking whatsoever, and characterize the encounter as an uninterrupted sequence whereby Detectives Bernhardt and Bonilla were attempting to reasonably restrain Plaintiff who was resisting arrest. Defs.' 56.1 ¶¶ 30, 32; Bernhardt Dep. Tr. at 39:19-25; 41:13-25; 48:25-50:8; Bonilla Dep. Tr. at 35:9-11, 17-18; 42:5-6; 58:8-18; 58:22-59:7. Wohnsigl, however, disputes this characterization and argues that the evidence permits an inference that the force was sequential – he was first punched by Detective Bonilla, and then kicked multiple times by Detective Bernhardt – rather than

simultaneous. Pl.s' 56.1 ¶¶9-10, 13. According to Plaintiff, these two officers remained in close proximity throughout the arrest, yet failed to stop the continued use of force by the other. Pl.'s Opp. at 7-8.

At this stage, the Court must credit Wohnsigl's version of events and draw all reasonable inferences in his favor. The Court cannot determine, as a matter of law, precisely how much time elapsed between the initial punch and the subsequent kicks, how many kicks occurred, the duration of the kicking, or whether either detective had sufficient opportunity to prevent additional force once Plaintiff was on the ground. These issues depend upon factual determinations concerning the sequence of events, the relative positions of the officers, and the duration of the encounter—all matters that remain disputed in the parties' submissions. Accordingly, summary judgment is denied with respect to the failure-to-intervene claims asserted against Detectives Bonilla and Bernhardt.

2. Detectives Gilroy and Hines

The claims against Detectives Gilroy and Hines present a different question. Plaintiff contends that both officers failed to intervene to prevent the force allegedly employed by their fellow detectives. *Id.* Defendants counter that neither detective was present at the time of the alleged punching and kicking, and therefore neither observed nor had any opportunity to prevent the alleged constitutional violation. Defs.' Mot. at 10.

The Court finds that participation in a coordinated arrest, without more, is insufficient to support Wohnsigl's claims. The mere fact that Gilroy and Hines

participated in the operation does not establish that they were within sight or earshot of the alleged force. Further, here, the Court finds no evidence that either Detectives Gilroy and Hines was present at the scene, or had any opportunity to observe or prevent the challenged use of force. Defs.' 56.1 ¶¶31, 33-35, 37; Gilroy Dep. Tr. at 31:23 – 32:22; Hines Dep. Tr. at 32:21 – 33:5. Plaintiff's contrary argument — that the coordinated nature of the arrest operation permits an inference of the detectives' presence — cannot serve as a proxy.

Because the record contains no evidence that either Detective Gilroy or Hines was present during, or had any opportunity to observe, the alleged use of force, no reasonable jury could find that either detective failed to intervene. Accordingly, Defendants' motion is granted with respect to the failure-to-intervene claim asserted against Detectives Gilroy and Hines.

**C. Qualified Immunity**

Defendants next invoke qualified immunity, arguing that their conduct was objectively reasonable under the circumstances. Defs.' Mem. at 13-14. The doctrine of qualified immunity "protects government officials from suit if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (internal quotation omitted). In resolving a qualified immunity defense, courts consider whether the facts alleged establish a constitutional violation and, if so, whether the right at issue was clearly established at the time of the challenged

conduct. *Id.* at 232. Courts retain discretion to address either prong first. *Pearson v. Callahan*, 555 U.S. 223, 232, 236, 129 S. Ct. 808, 172 (2009).

Where the qualified immunity analysis depends upon disputed issues of fact, summary judgment is generally inappropriate. *See Kerman*, 261 F.3d at 240; *Lennon v. Miller*, 66 F.3d 416, 420–21 (2d Cir. 1995). The Court must first determine the facts a reasonable jury could find before deciding whether the defense is established as a matter of law. *See Tolan v. Cotton*, 572 U.S. 650, 656–57, 134 S. Ct. 1861 (2014). Here, the availability of the defense turns upon disputed questions concerning the amount of force employed, Plaintiff's conduct during the arrest, the sequence of events, and the officers' opportunity to intervene, all of which must be resolved by the jury.

1. <u>Detectives Bonilla and Bernhardt</u>

Both the Supreme Court and the Second Circuit clearly establish that officers may not employ gratuitous or disproportionate force against an individual who has been subdued or no longer poses an immediate threat. *See Graham*, 490 U.S. at 396, S. Ct. at 1872; *Brown*, 798 F.3d at 103; *Tracy*, 623 F.3d at 98–99. As discussed above, Plaintiff's excessive force claims against Detectives Bonilla and Bernhardt turn upon sharply disputed accounts of the arrest. The qualified immunity inquiry therefore depends upon which version of events the jury ultimately credits. Because resolution of the qualified immunity defense depends upon disputed facts that must be resolved by the trier of fact, summary judgment on qualified immunity is inappropriate as to Detectives Bonilla and Bernhardt.

2. <u>Detectives Gilroy and Hines</u>

As discussed above, the Court concludes that Plaintiff's excessive force and failure-to-intervene claims against Detectives Gilroy and Hines fail as a matter of law. Accordingly, the Court need not make a determination on the availability of the qualified immunity defense as to these two Defendants.

**D. Punitive Damages**

Defendants also seek dismissal of Plaintiff's demand for punitive damages. Punitive damages are available in actions brought under Section 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S. Ct. 1625 (1983).

As a threshold matter, the standard governing punitive damages is distinct from that governing liability under the Fourth Amendment. Thus, a finding that an officer employed excessive force does not automatically entitle a plaintiff to punitive damages. Likewise, the Court should not dismiss a claim for punitive damages at summary judgment where resolution of the issue depends upon the jury's assessment of the defendant's intent or credibility. *See, e.g., Jones v. Treubig*, 963 F.3d 214, 239–40 (2d Cir. 2020) (recognizing that punitive damages ordinarily present a jury question where evidence could support a finding of reckless or callous indifference). Accordingly, Plaintiff's punitive damages claim depends upon the disposition of the underlying constitutional claims and the factual disputes previously identified.

As reflected above, a jury could reasonably conclude that the alleged force reflected a reckless or callous disregard for Plaintiff's clearly established constitutional rights. Whether Plaintiff ultimately satisfies the demanding standard established in *Smith v. Wade* is a question that depends upon the jury's evaluation of the witnesses and the surrounding circumstances. At this stage, the Court cannot conclude, as a matter of law, that no reasonable jury could award punitive damages. Accordingly, Defendants' motion is denied with respect to Plaintiff's request for punitive damages against Defendants Bernhardt and Bonilla.

**IV. CONCLUSION**

For the reasons set forth above, Defendants' motion for summary judgement is GRANTED in part and DENIED in part as follows:

(1) Defendants' motion is DENIED as to Plaintiff's excessive force and failure-to-intervene claims against Detectives Bonilla and Bernhardt;

(2) Defendants' motion is GRANTED as to Plaintiff's excessive force claim and failure-to-intervene claims against Detectives Gilroy and Hines;

(3) Defendants' motion based upon qualified immunity is DENIED as to all constitutional claims surviving summary judgment; and

(4) Defendants' motion to dismiss Plaintiff's punitive damages demand is DENIED with respect to all constitutional claims that survive summary judgment.

Dated: Central Islip, New York
August 21, 2026

**SO ORDERED**

/s/ Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge